UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**MORITT HOCK & HAMROFF LLP**
Michael Kwiatkowski, Esq.
Theresa A. Driscoll, Esq. (*admitted pro hac vice*)
400 Garden City Plaza
Garden City, NY 11530
Telephone: (516) 873-2000
Email:
mkwiatkowski@moritthock.com
tdriscoll@moritthock.com

*Counsel for Integrated Vehicle Leasing Inc.*

| | |
|---|---|
| In re:<br><br>JOSHUA TOURS LIMITED LIABILITY COMPANY,<br><br>　　　　　Debtor. | Case No.: 26-14194 (MEH)<br><br>Hearing Date: May 12, 2026<br><br>Chapter: 11 |

**OBJECTION BY INTEGRATED VEHICLE LEASING INC. TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I)(A) APPROVING AUCTION PROCEDURES AND NOTICE OF AUCTION SALE OF CERTAIN DEBTOR'S ASSETS; (B) SCHEDULING A HEARING TO CONSIDER THE SALE OF THE DEBTOR'S ASSETS; (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (D) WAIVING THE FOURTEEN DAY STAY; AND (E) GRANTING RELATED RELIEF; AND (II)(A) AUTHORIZING THE SALE OF CERTAIN DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (B) WAIVING THE FOURTEEN DAY STAY; <u>AND (C) GRANTING OTHER RELATED RELIEF</u>**

Integrated Vehicle Leasing Inc. ("<u>Integrated</u>"), as secured creditor and party-in-interest in the above-captioned chapter 11 case, by and through its undersigned counsel, hereby submits this limited objection (the "<u>Objection</u>") to the *Motion for Entry of an Order (I) (A) Approving Auction Procedures and Notice of Auction Sale of Certain Debtor's Assets; (B) Scheduling a Hearing to Consider the Sale of the Debtor's Assets; (C) Approving the Form and Manner of Notice Thereof; (D) Waiving the Fourteen Day Stay; and (E) Granting Related Relief; and (II) (A) Authorizing the Sale of Certain Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances;*

4298502v4

*(B) Waiving the Fourteen Day Stay; and (C) Granting Other Related Relief* filed by Joshua Tours Limited Liability Company (the "Debtor") on April 17, 2026 (the "Motion") [ECF No. 19][1].  In support of the Objection, Integrated respectfully states as follows:

**SUMMARY OF OBJECTION**

Integrated is the lender on two of the forty-eight buses the Debtor seeks to sell by the Motion.  Though Integrated does not necessarily object to the Debtor's efforts to maximize value for its estate through a sale process, any sale and sale process must respect the various secured creditor protections under the Bankruptcy Code including those provided for under Sections 506(a), 506(c), 363(f) and 363(k).  Thus, by this Objection, Integrated seeks to ensure that any order approving the Motion:

    i.  does not impose a surcharge, buyer's premium, auctioneer commission, or other cost against Integrated's vehicle collateral absent Integrated's consent or a separate showing under section 506(c);

    ii.  requires that bidders provide vehicle-specific purchase price allocations to the extent Integrated's collateral is included in any bulk or group lot sale and establishes a minimum bid requirement or reserve amount equal to the face amount of Integrated's liens so value can be determined under Section 506(a) of the Bankruptcy Code; and

    iii.  preserves Integrated's rights under section 363(k) to credit bid up to the full amount of its allowed secured claim without payment of any buyer's premium, cash surcharge, or other penalty, and without being limited by any pre-auction reserve amount or initial credit bid.

As set forth more fully below, Integrated submits that modification of the Proposed Auction Procedures is necessary to comport with the Bankruptcy Code-created rights afforded secured parties in chapter 11.

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Motion.

4298502v4

**RELEVANT BACKGROUND**

**A.  Integrated's Loan Documents and Equipment Collateral**

2.      On October 17, 2023, Integrated entered into two vehicle financing agreements with the Debtor, as obligor, bearing Loan Nos. 19318 and 19319 (each, an "Agreement," and collectively, the "Agreements"), pursuant to which Integrated financed the Debtor's acquisition of two 2024 Blue Bird school buses (each, an "Integrated Vehicle," and collectively, the "Integrated Vehicles").  Each Agreement provides for monthly payments in the amount of $3,189.00.  The Agreements, together with all related schedules, assignments, guaranties, title documents, insurance documents, and other documents executed or delivered in connection therewith, are collectively referred to herein as the "Loan Documents."

3.      Pursuant to the Agreements, the Debtor granted Integrated a first priority security interest in the Vehicles, including all proceeds and products thereof, all proceeds of insurance thereon, all substitutions therefor, and all additions thereto.

4.      Integrated collaterally assigned its rights to the Vehicles to Metropolitan Commercial Bank ("MCB") and MCB has assigned back to Integrated all enforcement rights and remedies in the context of this chapter 11 case.

5.      The Debtor has failed to make the payments to Integrated required under the Loan Documents.  As of the filing of this Objection, the Debtor has not made any payments under the Loan Documents for three months.

6.      As of the Petition Date, the balance due Integrated in respect of each of the Integrated Vehicles was not less than $106,599.25 for an aggregate amount due Integrated of not less than $213,198.50.

**B.  Debtor's Bankruptcy Filing**

4298502v4

7.      On April 15, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code.  ECF No. 1.

8.      In the Motion, the Debtor stated that it "has determined that certain of its Vehicles are non-essential to its ongoing operations and seeks to sell such non-essential Vehicles" (the "NE Vehicles").  Motion, ¶ 2.

9.      Included in the NE Vehicles are the Integrated Vehicles.  *See* ECF No. 19-3, Ex. 1, Ex. A.  Specifically, the NE Vehicle schedule attached to the Proposed Auction Procedures identifies Integrated as the lender with respect to Bus Nos. H40 and H42.  *Id.*

## ARGUMENT

### A. Integrated Does Not Consent to a Surcharge of Its Vehicle Collateral or Carve-Out from Its Liens

10.      Integrated objects to the Motion to the extent the Proposed Auction Procedures shift the costs associated with the sale process including any auctioneer commission, buyer's premium, professional fee, storage cost, transportation cost, title cost, administrative expense, or other charge to Integrated and/or the Integrated Vehicles.

11.      Section 506(c) provides the limited statutory mechanism for imposing such costs on secured collateral.  It states that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."  The Debtor bears the burden of showing that any proposed surcharge is reasonable, necessary, and directly beneficial to Integrated. *See In re Concord Mktg., Inc.*, 268 B.R. 415, 424 (Bankr. D.N.J. 2001) ("To recover expenses under § 506(c), a claimant must demonstrate that (1) the expenditures are reasonable and necessary to the preservation or disposal of the property and (2) the expenditures provide a direct benefit to the secured creditor."); *See In re Towne, Inc.*, 536 F. App'x 265, 269 (3d Cir. 2013) ("[W]e have

4

read section 506(c) as requiring [']a direct benefit to the secured creditors.[']"); *In re C.S. Assocs.*, 29 F.3d 903, 906–07 (3d Cir. 1994).

12. Courts have treated efforts to impose auctioneer commissions or buyer's premiums on credit-bidding secured creditors as surcharge issues requiring compliance with section 506(c), namely that the amount expended was reasonable, and the secured creditor benefitted from the expense. *See In re Dalton Crane, L.C.*, 641 B.R. 850, 863-66 (Bankr. S.D. Tex. 2022); *In re A-1 Plank & Scaffold Mfg., Inc.*, 437 B.R. 689, 696 (Bankr. D. Kan. 2010). The Debtor should not be permitted to characterize a buyer's premium, auctioneer commission, or deduction from sale proceeds as a procedural term if the economic effect is to charge Integrated's collateral for the costs of a sale Integrated did not request and to which Integrated may not consent.

13. This is particularly true where the Debtor has acknowledged that the NE Vehicles are "non-essential to its ongoing operations" and that the proposed auction is intended to "maximize the value of such Assets for the benefit of the Debtor's estate and all parties in interest." Motion, ¶ 2. As such, if the Debtor elects to sell the Integrated Vehicles for the benefit of the estate, the costs of that sale should be borne by the estate unless the Debtor satisfies section 506(c) of the Bankruptcy Code.

**B. Bidders Must Be Required to Make Vehicle-Specific Allocations of the Purchase Price**

14. Integrated objects to the Motion to the extent the Proposed Auction Procedures permit the Integrated Vehicles to be included in a bulk or group lot *without* a vehicle-specific allocation of the purchase price. The Motion provides that the NE Vehicles "will be offered in individual lots and may, at the Auctioneer's discretion, be offered in bulk or group lots." Motion, ¶ 17.

15. If the Integrated Vehicles are sold together with other lenders' collateral, the

proceeds attributable to the Integrated Vehicles must be determined <u>before</u> the sale closes.  Without a vehicle-specific allocation, Integrated may be forced into a post-sale dispute over the amount of proceeds attributable to its collateral, while the Debtor or other parties seek to use, distribute, or otherwise apply the sale proceeds.

16.      Section 506(a) provides that an allowed claim is secured "to the extent of the value of such creditor's interest in the estate's interest in such property."   The Third Circuit has recognized that section 506(a) requires valuation of the collateral securing the creditor's claim. *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 140–43 (3d Cir. 2012).  Accordingly, Integrated's secured position must be measured by the value realized from the sale of the Integrated Vehicles, not the entire fleet of vehicles.  The Motion fails to explain how the value of Integrated's secured claim will be determined under section 506(a) absent a purchase price allocation at the time of sale.

17.      In *In re CDX Gas, LLC*, the bankruptcy court rejected proposed sale procedures where the sale motion failed to allocate any portion of the purchase price to the specific asset on which the objecting secured creditor asserted a lien.  No. 08-37922-HR-11, 2009 WL 1651445, at *3 (Bankr. S.D. Tex. June 9, 2009).  The court reasoned that a sale without such allocation would extinguish the secured creditor's lien while depriving it of the protections it otherwise would receive through the chapter 11 process.  *Id.*  The same concern exists here.  If the Integrated Vehicles are sold as part of a bulk or group lot without a vehicle-specific allocation, Integrated cannot determine the proceeds attributable to its collateral.  Accordingly, any order approving the Motion should require buyers bidding in any bulk or group allocate the purchase price by NE Vehicle.

4298502v4

**C. The Proposed Sale Procedures Improperly Limit Integrated's Credit Bid Rights Under Section 363(k) of the Bankruptcy Code**

18.     Section 363(k) of the Bankruptcy Code provides, in relevant part, that, at a sale of property subject to a lien securing an allowed claim, "unless the court for cause orders otherwise," the holder of such claim "may bid at such sale" and, if it purchases the property, "may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). The Third Circuit has recognized that "[i]t is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims." *In re SubMicron Sys. Corp.*, 432 F.3d 448, 459 (3d Cir. 2006). Accordingly, absent a cause-based limitation ordered by the Court, Integrated may protect its collateral position by credit bidding up to the full amount of its secured claim without being required to pay cash.

19.     That right is especially important here because the Debtor seeks to sell identified collateral securing vehicle-specific obligations. Integrated's rights attach to two specific vehicles, not to the Debtor's fleet generally. If bidding for either of the Integrated Vehicles is below the amount of Integrated's secured claim, section 363(k) permits Integrated to protect itself by bidding its debt rather than allowing its collateral to be sold at a depressed price. The Proposed Auction Procedures burden, rather than protect, Integrated's rights under section 363(k).

20.     Specifically, the Proposed Auction Procedures create uncertainty as to what "reserve" means and whose reserve controls. The Motion provides that the NE Vehicles "may be subject to a reserve price as agreed to by the Debtor and the Auctioneer." Motion, ¶ 17. That language appears to refer to a minimum sale price established by the Debtor and Auctioneer. Separately, however, the Proposed Auction Procedures provide that any secured creditor wishing to set a "reserve amount or initial credit bid" must submit "such reserve amount or initial credit bid to Auctioneer, with notice to Debtor's counsel, no later than fifteen (15) business days prior to

7

4298502v4

the date set for the conclusion of the Auction." ECF No. 19-2, Ex. A, ¶ 6. The Proposed Auction Procedures further provide that any credit bid "in excess of such initial credit bid or reserve amount shall be subject to the cash payment of a 15% buyer's premium in addition to any amount bid," and that if the creditor does not timely submit an initial credit bid or reserve price, "any credit bid made with respect to such vehicle shall be subject to a cash 15% buyer's premium." *Id.*

21.     These provisions are ambiguous and seemingly prejudicial to Integrated. Neither the Motion nor the Proposed Auction Procedures clearly state whether a reserve submitted by Integrated would establish the minimum price at which the Integrated Vehicles may be sold, whether the Debtor and Auctioneer may set a different reserve price for the Integrated Vehicles, whether Integrated's reserve must be honored by the Auctioneer, or whether the so-called reserve merely operates as an advance cap on the amount Integrated may later credit bid without incurring the 15% cash premium. Integrated should not be required to guess whether its submission will protect its collateral as a true reserve price or instead limit its statutory credit-bid rights.

22.     The Proposed Auction Procedures should be modified to require that there be a minimum price at which the Integrated Vehicles may be sold. Such minimum or reserve amount should be no less than the face amount of the liens on the Integrated Vehicles. Importantly, the Debtor will be unable to sell the Integrated Vehicles free and clear of Integrated's liens unless the proceeds of sale exceed the amount of Integrated's liens.[2] *See* 11 U.S.C. § 363(f)(3). Section 363(f)(3) of the Bankruptcy Code requires the Debtor to establish that "the price at which such

---

[2] The Debtor argues that it is authorized to sell the Vehicles free and clear of liens under section 363(f)(5) on the basis that lienors can be compelled to accept money satisfaction of their interests in a legal or equitable proceeding. Objection, ¶ 30. In so doing, the Debtor relies upon UCC § 9-610 as the statutory framework pursuant to which lienholders as to the Vehicles, including Integrated, may be compelled to accept money satisfaction of their interests. *Id.* This argument is flawed in that UCC § 9-610 provides the <u>secured party,</u> not the debtor, with a remedy. Any sale pursuant to UCC § 9-610 would be at the secured party's initiative and can hardly be characterized as compelling the secured party to accept a money satisfaction, particularly since the secured party would have the right to credit bid its debt at any sale pursuant to UCC § 9-610.

8

4298502v4

property is to be sold is greater than the aggregate value of all liens on such property." In this District, "value" under section 363(f)(3) is measured by the face amount of the liens, rather than the economic value of the collateral. *See In re WDH Howell, LLC*, 298 B.R. 527, 531-34 (D.N.J. 2003). In *Howell*, the New Jersey District Court rejected the "economic value" approach, reasoning that "'the bankruptcy court should not order property sold free and clear of liens unless the court is satisfied that the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt's estate.'" *Id.* at 534 (quoting *Matter of Riverside Inv. P'ship*, 674 F.2d 634, 638–41 (7th Cir.1982)). In 2017, this Court adopted this approach in *In re Lutz*, concluding that "the term 'value' means the face value of the lien" and holding that section 363(f)(3) was not met where the proposed sale price was less than the face value of the lien. No. 16-26969 (JNP), 2017 WL 3316046, at *2 (Bankr. D.N.J. May 3, 2017).

23.    Accordingly, any order approving the Motion should provide that Integrated may credit bid up to the full amount of its allowed secured claim with respect to the Integrated Vehicles, including all principal, interest, fees, costs, attorneys' fees, expenses, protective advances, and other amounts secured under the Loan Documents and applicable law, without payment of any buyer's premium, deposit, cash surcharge, or similar charge. Any failure by Integrated to submit a reserve amount or initial credit bid by the proposed fifteen-business-day deadline should not be deemed a waiver, cap, or limitation of Integrated's rights under section 363(k), section 363(e), section 506, the Loan Documents, or applicable non-bankruptcy law. Moreover, any reserve price applicable to the Integrated Vehicles, and any determination by the Debtor, in consultation with the Auctioneer and Debtor's counsel, as to the "highest or otherwise best offer" for either Integrated Vehicle, should not impair Integrated's lien rights, credit-bid rights, proceeds rights, title rights, or adequate-protection rights, and should remain subject to Integrated's right to object

9

at the Sale Hearing.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Integrated respectfully requests that any Order entered on the Motion address the concerns articulated herein and grants such other and further relief as the Court deems just and proper.

Dated: May 5, 2026                  **MORITT HOCK & HAMROFF LLP**

By: */s/ Michael Kwiatkowski*
Michael Kwiatkowski, Esq.
Theresa A. Driscoll, Esq. (*admitted pro hac vice*)
400 Garden City Plaza
Garden City, NY 11530
Telephone: (516) 873-2000
Email: tdriscoll@moritthock.com

*Counsel for Integrated Vehicle Leasing Inc.*

4298502v4